# THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| FASTCASE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case 1:16-cv-00327-TCB |
| v. | ) | |
| | ) | **MEMORANDUM OF LAW** |
| LAWRITER LLC, dba CASEMAKER, | ) | **IN SUPPORT OF MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Fastcase is a legal research service that provides online access to searchable databases of public law, including federal and state statutes, administrative rules and regulations such as the Georgia Administrative Rules and Regulations, and judicial decisions, as well as to secondary sources in many states. Fastcase brought this action for declaratory relief to protect itself against Defendant Lawriter's threat to sue Fastcase for its publication of the Georgia Administrative Rules and Regulations.

Summary judgment in favor of Fastcase is appropriate because it is well established in both federal and state law that state laws and regulations are in the public domain, and state publishing contracts cannot create exclusive private rights in state law. *Banks v. Manchester*, 128 U.S. 244 (1888); *Harrison Co. v. Code Revision Comm'n,* 244 Ga. 325 (1979).

**Table of Contents**

Table of Authorities ..................................................................................... ii

I. THE UNDISPUTED FACTS ...................................................................... 1

II. THE APPLICABLE LAW ......................................................................... 5

    A. Declaratory Judgment Principles ..................................................... 5

    B. Summary Judgment Principles ......................................................... 6

    C. Fundamental Principle that State Law Must Be Freely Available ............ 6

    D. Pre-Emption By Federal Copyright Law ........................................... 9

        1.   A claim of exclusive right to copy or distribute is equivalent
             to copyright ............................................................................... 10

        2.   State rules and regulations are within the subject matter of
             copyright .................................................................................... 11

III. THE LAW IS NOT COPYRIGHTABLE, AND PUBLISHING
     CONTRACTS CANNOT CREATE PRIVATE COPYRIGHTS;
     JUDGMENT SHOULD BE ENTERED IN FAVOR OF FASTCASE ........ 12

    A. The Court Has Subject Matter Jurisdiction ............................................. 12

        1.   Diversity jurisdiction exists ......................................................... 12

        2.   Federal Question jurisdiction exists ............................................. 15

        3.   Lawriter's threats present a "Case or Controversy" ..................... 17

    B. Neither Copyright Nor Private Contract Can Create Exclusive
       Publication Rights in Georgia Regulations ........................................ 19

IV. CONCLUSION ...................................................................................... 24

**Table of Authorities**

**Cases**

*Banks v. Manchester*, 128 U.S. 244 (1888)……………………………………..6

*Banks v. West*, 27 F. 50 (C.C.D.Minn. 1886)……………………………………..23

*Briarpatch Ltd. v. Phoenix Pictures, Inc*., 373 F.3d 296 (2nd Cir. 2004)………..16

*Building Officials & Code Adm. v. Code Technology, Inc*.,
     628 F.2d 730 (1980)…………………………………………………………….22-23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………..6

*Davidson v. Wheelock*, 27 F. 61 (1866)…………………………………...7, 21

*Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc*.,
     120 F.3d 216 (11th Cir. 1997)……………………………………….13-14

*Gould v. Banks, 53 Conn. 415 (1886)……………………………………………..21*

*GTE Directories Publ'g. Corp. v. Trimen Am., Inc*.,
     67 F.3d 1563 (11th Cir. 1995)……………………………………………14-15

*Harrison Co. v. Code Revision Commission*, 244 Ga. 325 (1979)…………..8-9, 23

*Hickson Corp. v. N. Crossarm Co., Inc*.,  357 F.3d 1256 (11th Cir. 2004)………..6

*Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348 (1961)…………….....…..13

*Howell v. Miller*, 91 F. 129 (6th Cir. 1898)…………………………………...8, 21-22

*Hudson Ins. Co. v. Am. Elec. Corp*., 957 F.2d 826 (11th Cir. 1992)……………..15

*Malowney v. Fed. Collection Deposit Grp*., 193 F.3d 1342 (11th Cir. 1999)……..5

*Nash v. Lathrop*, 142 Mass. 29 (1886)………………………………………..7

*Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005)………………………………...16

*Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225 (4th Cir. 1993)………………16

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)…………..13

*Strickland v. Alexander*, 772 F.3d 876 (11th Cir. 2014)…………………………5-6

*Stuart Weitzman, LLC v. Microcomputer Resources*,
    542 F.3d 859 (11th Cir. 2008)…………………………………………………...16

*Veeck v. Southern Bldg. Code Congress Intern.*, 293 F.3d 791 (5th Cir. 2002)…...8

*Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834)……………………………6, 19-20

## Statutes and Rules

Constitution, Art. III…………………………………………………………………..5

17 U.S.C., § 102(a)…………………………………………………………………..11

17 U.S.C., § 106……………………………………………………………………10-11

17 U.S.C., § 301…………………………………………………………………….…15

17 U.S.C., § 301(a)……………………………………………………………9-10, 16

28 U.S.C., § 1331…………………………………………………………………15, 17

28 U.S.C., § 1332(a)(1)…………………………………………………………..12-13

28 U.S.C., § 1332(c)………………………………………………………………….13

28 U.S.C., § 1338(a)…………………………………………………………….15, 17

28 U.S.C. § 2201…………………………………………………………………...5

O.C.G.A.§ 50-13-1 *et seq*…………………………………………………………1

Fed. R.Civ. P. 56(c)…………………………………………………………………6

N.D.Ga. LR 5.1B…………………………………………………………………25

# I.  <u>THE UNDISPUTED FACTS</u>

Fastcase is a legal research service that provides online access to searchable databases of public law, including federal and state statutes (all 50 states and the District of Columbia), administrative rules and regulations such as the Georgia Administrative Rules and Regulations, and judicial decisions, as well as to secondary sources in many states.  Declaration of Edward J. Walters at 1, ¶ 2. Fastcase is available by subscription to lawyers and law firms, and is also made available for free to members of state bar associations such as the State Bar of Georgia as a benefit of membership in the bar.  *Id.* at 2, ¶ 5.

Lawriter is a legal research service that similarly offers searchable access to cases, statutes, and other primary law materials operating under the name Casemaker.  *Id.*, ¶ 6.  Lawriter represents that it "is the designated publisher of the Georgia Rules and Regulations and Monthly Bulletins and granted sole rights to the distribution of this data."  Doc. 4-1.  Lawriter acknowledges that "[t]he Rules and Regulations of the State of Georgia is a compilation of the rules and regulations of state agencies that have been filed with the Office of the Secretary of State pursuant to the Georgia Administrative Procedures Act, O.C.G.A.§ 50-13-1 *et seq*."  Doc. 4-2.

On December 21, 2015, Lawriter sent Fastcase a letter asserting that:  (a)

Lawriter is the sole "party authorized to license and/or offer subscriptions to use . . . Electronic Files . . . incorporating the [Georgia Regulations]," and (b) Fastcase's provision of fee-based access to Georgia Regulations, without Lawriter's consent or authorization or a subscription with Lawriter, violates Lawriter's "legal rights." Declaration of Edward J. Walters at 3, ¶ 9 and Doc. 4-3.  The letter threatened enforcement, including through the commencement of litigation, of Lawriter's unspecified "rights," unless Fastcase:  (a) immediately provided Lawriter a written response justifying its right to use Georgia Regulations, (b) purchased from Lawriter a subscription to Georgia Regulations, or (c) ceased use of Georgia Regulations, including provision of fee-based access to Georgia Regulations. Doc. 4-3.

Fastcase brought this action for a declaration of its rights to use and republish the Georgia Regulations without restriction or threat of suit.  Declaration of Edward J. Walters at 3, ¶ 11; Doc. 1.  Lawriter counterclaimed for unjust enrichment and *quantum meruit* (Doc. 13) but then amended its Answer (Doc. 14) to withdraw all counterclaims.  Lawriter has not made any claims that it contributes original or copyrightable editorial work to the Georgia Regulations, as Lawriter publishes the Georgia Regulations directly from the agencies of the State of Georgia.  *See* Docs. 13, 14.

At about the same time that Lawriter withdrew its counterclaims, the page of the Georgia Secretary of State's web site providing access to the official text of the Georgia Rules and Regulations, http://rules.sos.ga.gov, was changed, apparently by Lawriter.  Declaration of Edward J. Walters at 3-4, ¶ 12; *see* Doc. 14 at 4, ¶ 17 and Doc. 14-1.  Instead of providing direct access to the Georgia Regulations, the web site now announces that "certain features of this site have been disabled for the general public to prevent digital piracy."  Declaration of Edward J. Walters at 4, ¶ 13 and Doc. 14-1.  Where the Secretary of State formerly had offered the services of Lawriter to provide research and printed copies of regulatory materials for stated fees, its website now says:

> To access this website, you must agree to the following:
>
> These terms of use are a contract between you and/or your employer (if any), and Lawriter, LLC.
>
> You agree that you will not copy, print, or download anything from this website other than for your personal use.
>
> You agree not to use any web crawler, scraper, or other robot or automated program or device to obtain data from the website.
>
> You agree that you will not sell, will not license, and will not otherwise make available in exchange for anything of value, anything that you download, print, or copy from this site.

Declaration of Edward J. Walters at 4, ¶ 14 and Doc. 14-1.

Even while Lawriter "denies that it purports to have exclusive rights to

publish the Georgia Regulations," it "affirmatively states that it has the exclusive right to control commercial access to the Georgia Regulations as compiled and made available on-line by Defendant."  Doc. 14 at 2, ¶¶ 3, 4.  Lawriter also claims "legal and equitable rights in electronic files it creates and maintains" relating to the laws, rules and regulations of other States.  Doc. 14 at 3, ¶ 7.  As Fastcase updates its collection of the Georgia Regulations from the official Georgia Secretary of State website, these purported license terms attempt to exclude Fastcase and any other commercial user of the Georgia Regulations, including lawyers engaged in the representation of clients.  Declaration of Edward J. Walters at 5, ¶ 17.

Therefore, although Lawriter has withdrawn its original counterclaims, it continues to re-assert the substance of the withdrawn claims and has attempted to create for itself even greater exclusive ownership rights in the official text of the Georgia Regulations.  *Id.*, ¶ 18.  As a result, Fastcase is under a perpetual and imminent threat of litigation and commercial harm from Lawriter's claim of rights it does not and cannot have.  *Id.*, ¶ 19.

## II.  <u>THE APPLICABLE LAW</u>

### A.  <u>Declaratory Judgment Principles</u>

Under Article III of the Constitution, federal courts have the power to adjudicate actual "Cases" and "Controversies."  *Strickland v. Alexander*, 772 F.3d 876, 882 (11th Cir. 2014); *see* 28 U.S.C. § 2201 (a court may issue a declaratory judgment in "a case of actual controversy within its jurisdiction"). As part of the case-or-controversy requirement, a plaintiff must establish that he has "standing" to invoke the power of a federal court to decide the merits of a particular dispute. *Malowney v. Fed. Collection Deposit Grp*.,  193 F.3d 1342, 1346 (11th Cir. 1999).

> At a constitutional minimum, plaintiffs must make the following three showings to establish standing:
> 
> (1)   that they personally have suffered a concrete "injury in fact" -- some actual or imminent invasion of a legally protected interest;
> 
> (2)   that a causal connection exists between the injury and the conduct complained of -- the injury fairly must be traceable to the challenged action;
> 
>   and
> 
> (3)   that the injury is likely to be redressed by a favorable decision.

*Strickland v. Alexander*, 772 F.3d at 882.

Where, as here, the plaintiff seeks only declaratory or injunctive relief, as opposed to damages for injuries already suffered, "the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial

likelihood that he will suffer injury in the future.'"   *Strickland*, 772 F.3d at 883 (quoting *Malowney*, 193 F.3d at 1346).

## B.  Summary Judgment Principles

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case."  *Hickson Corp. v. N. Crossarm Co., Inc*.,  357 F.3d 1256, 1259-60 (11th Cir. 2004).

## C.  Fundamental Principle that State Law Must Be Freely Available

It has been established in American law for nearly two centuries that public law is not subject to any party's exclusive control, and must remain public as a matter of due process.  *See Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 668 (1834) ("no reporter has or can have any copyright in the written opinions delivered by this court; and that the judges thereof cannot confer on any reporter any such right"); *Banks v. Manchester*, 128 U.S. 244, 253 (1888) ("The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute").

Originally established with regard to judicial decisions, this bedrock principle applies with equal force to all other aspects of public law, including regulations promulgated by state agencies.  As far back as 1866, the federal Circuit Court for Minnesota decreed that state statutes were not subject to any proprietary interest:

> [The complainants] obtained no exclusive right to print and publish and sell the laws of the state of Minnesota, or any number of legislative acts. . . . such compiler could obtain no copyright for the publication of the laws only; ***neither could the legislature confer any such exclusive privilege upon him***.

*Davidson v. Wheelock*, 27 F. 61 (1866) (emphasis added).

The Supreme Judicial Court of Massachusetts similarly concluded that judicial decisions and legislative enactments are of the same essence, for purposes of requiring public access:

> The decisions and opinions of the justices are the authorized expositions and interpretations of the laws, which are binding upon all the citizens.  They declare the unwritten law, and construe and declare the meaning of the statutes.  ***Every citizen is presumed to know the law thus declared, and it needs no argument to show that justice requires that all should have free access to the opinions, and that it is against sound public policy to prevent this***, or to suppress and keep from the earliest knowledge of the public the statutes, or the decisions and opinions of the justices.  Such opinions stand, upon principle, on substantially the same footing as the statutes enacted by the legislature.

*Nash v. Lathrop*, 142 Mass. 29, 35 (1886) (emphasis added).

- 7 -

Free access to state law necessarily includes freedom to publish or re-publish, even by copying from the sole "authorized" publisher.  *Howell v. Miller*, 91 F. 129, 137 (6th Cir. 1898) ("any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the property of an individual").  That the "book" used as a source of public law may be electronic rather than "printed" cannot change the underlying principles.

Relatively recently, the Fifth Circuit has made it clear that same principle of free access must apply even to regulatory codes that are written and promulgated by private organizations, and merely adopted by the pertinent governmental authority:

> [W]e hold that when Veeck copied only "the law" of Anna and Savoy, Texas, which he obtained from SBCCI's publication, and when he reprinted only "the law" of those municipalities, he did not infringe SBCCI's copyrights in its model building codes. The basic proposition was stated by Justice Harlan, writing for the Sixth Circuit: "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book ..."  *Howell v. Miller*, 91 F. 129, 137 (6th Cir. 1898).

*Veeck v. Southern Bldg. Code Congress Intern.*, 293 F.3d 791, 800 (5th Cir. 2002).

The Supreme Court of Georgia is in accord.  In *Harrison Co. v. Code Revision Commission*, 244 Ga. 325 (1979), the Court considered the effect of a contract between Georgia's Code Revision Commission and The Michie

Company, pursuant to which Michie was granted "the exclusive right to distribute and sell sets and volumes of the Code for a 10 year period extending from the date of the initial publication of the Code, as well as the exclusive right to publish annual supplements and periodic replacement volumes to the Code for the same 10 year period."  244 Ga. at 329.

The Court concluded:

> The exclusive right referred to is the exclusive right to publish the "Official Code of Georgia Annotated," the copyright for which will be in the name of the state.  Both Michie and the state, however correctly concede that this provision does not prevent Harrison from publishing a competitive product; *i.e.*, a Code with annotations by Harrison.  As was said in *Davidson v. Wheelock*, 27 F. 61 (D.Minn. 1866), a state's laws are public records open to inspection, digesting and compiling by anyone.  Michie is not being given an exclusive franchise as to the publication of laws in Georgia.

*Id.*

## D.  Pre-Emption By Federal Copyright Law

Federal copyright law is the exclusive body of law under which anyone may claim exclusive rights to copy, publish or distribute the Georgia Regulations, and federal copyright law pre-empts any attempt by to create contract-based private copyrights for itself.  The Copyright Act declares:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject

matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C., § 301(a).

Indisputably, the Georgia Rules and Regulations are "works of authorship" and "are fixed in a tangible medium of expression."

There are still two threshold questions to determine whether the claims Lawriter threatens to assert here would necessarily be pre-empted by federal copyright law:   (1) whether the claimed rights "are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and (2) whether the works in which rights are claimed "come within the subject matter of copyright as specified by sections 102 and 103."   The type of claim asserted by Lawriter is pre-empted because the answers to both questions is "yes, they are."

1.     **A claim of exclusive right to copy or distribute is equivalent to copyright**

Section 106 of the Copyright Act bestows on the owner of a copyright "the exclusive rights to do and to authorize any of" six enumerated acts.  Four of the six unambiguously apply to the conduct complained of by Lawriter in its demand letter and actually alleged in its pleadings:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

. . . .

(5) to display the copyrighted work publicly.

17 U.S.C., § 106.

## 2. <u>State rules and regulations are within the subject matter of copyright</u>

Section 102(a) of the Copyright Act describes the subject matter of copyright law:

> Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

17 U.S.C., § 102(a).

State rules and regulations, although not protectable by copyright as a matter of public policy, are indisputably within the subject matter of copyright.

Therefore, federal copyright law governs whether any party can exclude any other person from copying, publishing, distributing or using the Georgia Regulations.

### III.  THE LAW IS NOT COPYRIGHTABLE, AND PUBLISHING CONTRACTS CANNOT CREATE PRIVATE COPYRIGHTS; JUDGMENT SHOULD BE ENTERED IN FAVOR OF FASTCASE

In its original response to Fastcase's Complaint for declaratory relief, Lawriter set forth in its answer a counterclaim showing exactly what claims it threatened to assert.  The later withdrawal of the counterclaims by amendment cannot change either the nature or the vitality of the threat.  Lawriter still claims the right to prohibit anyone from access to the Georgia Regulations without its consent, and to prohibit anyone from copying or republishing the Georgia Regulations in competition with it.

Lawriter's claims have no merit, and cannot be amended to show merit. Judgment should, therefore, be entered in favor of Fastcase.

### A.  The Court Has Subject Matter Jurisdiction

In light of Lawriter's assertion of lack of subject matter jurisdiction as an affirmative defense (Doc. 14 at 7, ¶¶ 32-35), it is appropriate to note that the court has both diversity and federal question jurisdiction.

### 1.  Diversity jurisdiction exists

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C., §

1332(a)(1).

Lawriter admits that it is "a citizen of Virginia for purposes of assessing diversity jurisdiction."  Doc. 4 at 3, ¶ 8, admitted by Lawriter in Doc. 14 at 3, ¶ 9. Fastcase is, for diversity purposes, a citizen of Delaware and the District of Columbia.  Declaration of Edward J. Walters at 1, ¶ 3; *see* Doc. 4 at 3, ¶ 7.  *See* 28 U.S.C., § 1332(c) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").  The parties are, therefore, diverse.

The amount in controversy exceeds the threshold for diversity jurisdiction, because Fastcase has sold, or offered to sell, access to electronic databases including the Georgia Regulations with a cumulative value in excess of $75,000. *Id.* at , ¶ .

> The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed "in good faith."  In deciding this question of good faith we have said that it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

*Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 353 (1961) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 289 (1938)).

The Eleventh Circuit has recognized that, when a plaintiff seeks "only injunctive and declaratory relief, it is well established that the amount in

controversy is measured by the value of the object of the litigation." *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc*., 120 F.3d 216, 218 (11th Cir. 1997).

Here, there can be no serious question about the good faith of Fastcase's allegation that the value of the object of the litigation exceeds the jurisdictional threshold.   Although Lawriter objects that Fastcase "improperly amalgamates damages" to reach $75,000 (Doc. 14 at 7, ¶ 35), the counterclaims originally pleaded by Lawriter sought disgorgement of all benefits earned by Fastcase from the sale or license of access to the Georgia Regulations, or an injunction preventing Fastcase "from using the rules and regulations in any manner."  Doc. 13 at 8, ¶¶ 41-44, 50.

The value to each subscriber is not in issue here, so there is no question of aggregation of separate claims.  The amount at stake for Fastcase is not the price of any single subscription, but the entire value of this aspect of its business.  This Court has subject matter jurisdiction because that value exceeds $75,000.

Lawriter's subsequent withdrawal of its counterclaims cannot retroactively deprive the Court of subject matter jurisdiction, especially in light of Lawriter's continuing claims of exclusive rights.  "A case or controversy must exist at the time the declaratory judgment action is filed."  *GTE Directories Publ'g. Corp. v.*

- 14 -

*Trimen Am., Inc.,*  67 F.3d 1563, 1567 (11th Cir. 1995).

**2.    Federal Question jurisdiction exists**

In an action for declaratory relief only, the court "court must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992).

To the extent that the cause of action anticipated by Fastcase - as confirmed by the counterclaims Lawriter actually did assert, and re-affirmed by Lawriter's continuing claims of exclusive rights - are founded on the acts of copying, preparation of derivative works, distribution or display (exclusive rights under copyright law), they are pre-empted and governed by federal copyright law.  17 U.S.C., § 301.  To the extent that the claims threatened by Lawriter are pre-empted by federal copyright law, subject matter jurisdiction is established by 28 U.S.C., § 1338(a), in addition to general federal question jurisdiction pursuant to 28 U.S.C., § 1331.

Fastcase must at this point acknowledge that the Eleventh Circuit, apparently alone among the several Circuits considering the question, has concluded that copyright pre-emption cannot establish federal question jurisdiction in the absence of a copyright registration, because registration is in most circumstances a

jurisdictional pre-requisite to filing suit in federal court.  *Stuart Weitzman, LLC v. Microcomputer Resources*, 542 F.3d 859 (11th Cir. 2008).[1]  Fastcase submits that the majority rule, that claims pre-empted by copyright raise federal questions even without registration, is more sound in the circumstances of this case, because the *timing* of a copyright filing is entirely within the control of the copyright claimant.

A party in Lawriter's position may easily send out its demand letter first and submit its copyright application second.

Lawriter unambiguously claims that its copyright interests are at stake in this action:

> Defendant denies that it claims an exclusive right to publish other states' laws, rules and regulations, but reserves its legal and equitable rights in electronic files it creates and maintains, including without limitation, the right to claim copyright in any copyrightable materials, electronic files, data, source code and/or anything in addition to the statutory text and numbering in the content of the site(s).

---

[1]    *See, e.g., Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2nd Cir. 2004) ("[P]laintiffs' unjust enrichment claim . . . is preempted by the Copyright Act. . . . To the extent that the project includes non-copyrightable material, such as ideas, these are not sufficient to remove it from the broad ambit of the subject matter categories."); *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232 (4th Cir. 1993) ("We likewise conclude that Congress intended that actions pre-empted by Sec. 301(a) of the Copyright Act be regarded as arising under federal law"); *Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir. 2005) ("The grant of exclusive jurisdiction to the federal courts over civil actions arising under the Copyright Act, combined with the preemptive force of § 301(a), compels the conclusion that Congress intended that state law actions preempted by § 301(a) of the Copyright Act arise under federal law").

Doc. 14 at 3, ¶ 7; *see also* ¶ 27 (Lawriter "maintains certain exclusivity rights with respect to electronic files, data, and/or other copyrightable materials on the site(s)").

Therefore, Fastcase submits that this Court does have subject matter jurisdiction under §§ 1331 and 1338 (as well as diversity jurisdiction, as discussed earlier), because the Court would have had subject matter jurisdiction under those statutes if Lawriter had actually followed through on its threat of litigation by applying for copyright registration and then bringing suit.

3.   **Lawriter's threats present a "Case or Controversy"**

The Declaratory Judgment Act offers relief in these circumstances because, despite withdrawal of its originally asserted counterclaims, Lawriter still asserts or purports to "reserve":

- "the exclusive right to control commercial access to the Georgia Regulations as compiled and made available on-line by Defendant" (*id.* at 2, ¶ 4);

- "the right to claim copyright in any copyrightable materials, electronic files, data, source code and/or anything in addition to the statutory text and numbering in the content of the site(s)" (*id.* at 3, ¶ 7);

- "certain exclusivity rights with respect to the Georgia Regulations, in

- 17 -

particular the Electronic Files" (*id.* at 5-6, ¶ 25); and

- "certain exclusivity rights with respect to electronic files, data, and/or other copyrightable materials on the site(s)" (*id.* at 6, ¶ 27).

Also, by changing the Secretary of State's web site, Lawriter now purports to have the right even to prevent access to the official text of the Georgia Regulations except on the following conditions:

> You agree that you will not copy, print, or download anything from this website other than for your personal use.
>
> You agree not to use any web crawler, scraper, or other robot or automated program or device to obtain data from the website.
>
> You agree that you will not sell, will not license, and will not otherwise make available in exchange for anything of value, anything that you download, print, or copy from this site.

Doc. 14-1.

The restrictions purportedly imposed by these "Terms and Conditions" are not in any way limited to whatever "electronic files, data, and/or other copyrightable materials on the site" Lawriter admits to claiming exclusive rights to, but encompasses the entire official "statutory text and numbering" of the Georgia Regulations, contrary to Lawriter's insistence that it makes no claim of rights in that material.

Moreover, although Lawriter *says* that it "is not seeking to enforce its

contract with the State of Georgia against Plaintiff," there is no other possible foundation for Lawriter's claim to control access to the Georgia Regulations other than through its alleged contract with the State.

Notwithstanding its disclaimer of some of the theories on which such a claim might be founded,[2] Lawriter's continuing claim of right to control access to the official text of the Georgia Regulations creates ongoing uncertainty and confusion, and fully justifies Fastcase's suit for declaratory judgment that Lawriter cannot lawfully restrict Fastcase's access to, or use of, the Georgia Regulations. Lawriter admits that "Georgia Regulations are binding law and are promulgated by public agencies of the State of Georgia published for the benefit of the public by the Georgia Secretary of State."  Doc. 14 at 2, ¶ 2.

### B.  Neither Copyright Nor Private Contract Can Create Exclusive Publication Rights in Georgia Regulations

As long ago as 1834, in a dispute between Henry Wheaton and Richard Peters (better known by the abbreviations "Wheat." and "Pet." as early reporters of Supreme Court proceedings), the Supreme Court established the rule that copyright

---

[2]  "Defendant does not claim a copyright in the merely statutory text and numbering contained in the content of the site" (Doc. 14 at 2, ¶ 3); "Defendant denies that it claims an exclusive right to publish other states' laws, rules and regulations" (*id*. at 3, ¶ 7); "Defendant does not intend to commence, institute and/or file any litigation regarding any use of the Electronic Files by Plaintiff prior to April 7, 2016" (*id*. at 5, ¶ 23); and "Defendant admits that it is not seeking to enforce its contract with the State of Georgia against Plaintiff" (*id*. at 6-7, ¶ 30).

- however hard-earned it might be - could be protected only to the extent that the copyright statute permitted:

> That every man is entitled to the fruits of his own labour must be admitted; but he can enjoy them only, except by statutory provision, under the rules of property, which regulate society, and which define the rights of things in general.

*Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 658 (1834).

The right to publish legislative acts had been exclusive to the sovereign under English law, before establishment of the American republic.  *Id.* at 659 ("the king, as the head of the church and the state, claimed the exclusive right of publishing the acts of parliament").  In holding that the later reporter could republish cases originally reported by the earlier, the Court drew the inevitable inference that legislative acts, and the judicial decisions interpreting and applying them, must be owned by the *people* of this nation after adoption of our Constitution:

> It may be proper to remark that the court are unanimously of opinion, that no reporter has or can have any copyright in the written opinions delivered by this court; and that the judges thereof cannot confer on any reporter any such right.

*Id.* at 668.

All later courts that have considered the question have reached the same

conclusion.[3]   In 1866, the Circuit Court for Minnesota faced exactly the issue presented here:  whether legislation granting to one party a copyright in the laws of the state prevented any other party from publishing the same laws:

> Now, what is the exclusive right which the complainants are entitled to, under the acts of the legislature of the state of Minnesota above referred to?  Clearly, to print, publish, and sell the General Statutes of the state of Minnesota, as edited and prepared by the commissioner named by the legislature, containing his head and marginal notes, and his references.  ***They obtained no exclusive right to print and publish and sell the laws of the state of Minnesota, or any number of legislative acts.  The materials for such publication are open to the world.  They are public records***, subject to inspection by everyone, under such rules and regulations as will secure their preservation.  They may be digested or compiled by any one, and it is true such compilation may be so original as to entitle the author to a copyright on account of the skill and judgment displayed in the combination and analysis; but such ***compiler could obtain no copyright for the publication of the laws only; neither could the legislature confer any such exclusive privilege upon him***.

*Davidson v. Wheelock*, 27 F. 61, 62 (D.Minn. 1866) (emphases added).

The Sixth Circuit agreed, in a case involving compilations of Michigan statutes:

> It was suggested in argument that no one can obtain the exclusive right to publish the laws of a state in a book prepared by him.  This general proposition cannot be doubted.  And ***it may also be said that***

---

[3]    The 1886 decision by the Connecticut Supreme Court in *Gould v. Banks*, 53 Conn. 415 (1886), is sometimes interpreted as disagreeing with an otherwise uniform body of caselaw.  That case, however, held only that a publisher authorized by the state had no obligation to allow third parties access to materials before published.  That issue does not arise here.

> *any person desiring to publish the statutes of a state may use any*
> *copy of such statutes to be found in any printed book, whether such*
> *book be the property of the state or the property of an individual*.  If
> Miller had cut from Howell's books, delivered to him by the state, the
> general laws of Michigan as therein printed, and the pages so cut out
> had been used when his compilation was printed,— if this had been
> done, and nothing more,— there would have been no ground of
> complaint.

*Howell v. Miller*, 91 F. 129, 137 (1898) (emphasis added).

More recently, the First Circuit applied this principle in the case of BOCA, a non-profit organization that was, indisputably, the actual author of a model building code.  Massachusetts adopted the model code, with "relatively minor" variations, and invited BOCA to publish its revised version as the official state code.  BOCA did so, and offered its publication for sale.  "Massachusetts officials made a practice of referring to BOCA any persons interested in obtaining a copy of the Massachusetts building code for their own use."  *Building Officials & Code Adm. v. Code Technology, Inc*., 628 F.2d 730, 732 (1980).

BOCA sought to evade the uniformity of adverse precedent by arguing that it was not merely the publisher of laws promulgated by the state but was actually was the author of the code.  The First Circuit was "far from persuaded" by this argument:

> BOCA's argument overlooks another aspect of the ownership theory
> discussed in these cases.  The cases hold that the public owns the law
> not just because it usually pays the salaries of those who draft

legislation, but also because, in the language of *Banks v. West*, 27 F. 50, 57 (C.C.D.Minn.1886), "Each citizen is a ruler,-a law-maker." ***The citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process***.

Along with this metaphorical concept of citizen authorship, the cases go on to emphasize the very important and practical policy that citizens must have free access to the laws which govern them.  This policy is, at bottom, based on the concept of due process.  Regulations such as the Massachusetts building code have the effect of law and carry sanctions of fine and imprisonment for violations, *e.g.*, Mass.G.L. c. 23B s 17(a), P 3.  Due process requires people to have notice of what the law requires of them so that they may obey it and avoid its sanctions.  So long as the law is generally available for the public to examine, then everyone may be considered to have constructive notice of it; any failure to gain actual notice results from simple lack of diligence.  But ***if access to the law is limited, then the people will or may be unable to learn of its requirements and may be thereby deprived of the notice to which due process entitles them***.

*Id.* at 734 (emphases added).

To whatever extent Lawriter might seek to base its claims on state law, Georgia law similarly establishes that private contracts may not create exclusive rights in Georgia law, regardless of what Lawriter's contract with the Secretary of State says.  The Georgia Supreme Court has held that the "state's laws are public records open to inspection, digesting and compiling by anyone," notwithstanding an apparently exclusive contract awarded by the State to a single compiler/publisher.  *Harrison Co. v. Code Revision Commission*, 244 Ga. 325, 329

- 23 -

(1979).

## IV.  <u>CONCLUSION</u>

No matter what its contract with the Secretary of State might say, or what conditions it requires for access to its website, Lawriter simply has no ownership rights to control or limit access to the official text of the Georgia Regulations, as presented to the public on the website of Georgia's Secretary of State.  This Court can and should adjudicate that Lawriter's attempts to do so are improper and unlawful.  Lawriter has every right to charge a reasonable price to any third party for reprints or for access to any editorial material Lawriter might append to the Regulations.  However, nearly two centuries of uniform law and public policy, recognized by the Supreme Court of Georgia and the United States as well as by many courts in between, precludes any limitation on copying or republication of the Regulations themselves.

For these reasons, Fastcase respectfully submits that its motion for summary judgment should be granted, and that the Court should enter judgment declaring (1) that Lawriter does not and cannot have any copyright in the Georgia Regulations, or in the laws, rules, and regulations of any other State; and (2) that Fastcase does not and cannot infringe any exclusive contract rights held by Defendant in the Georgia Regulations, or in the laws, rules, and regulations of any other State.

Respectfully submitted this 12th day of May 2016.

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*/s/ Robert G. Brazier*
Robert G. Brazier (Georgia Bar No. 078918)
rbrazier@bakerdonelson.com
Steven G. Hall (Georgia Bar No. 319308)
shall@bakerdonelson.com
Joshua Tropper (Georgia Bar No. 716790)
jtropper@bakerdonelson.com
Monarch Plaza, Suite 1600
3414 Peachtree Road N.E.
Atlanta,  GA 30326
Telephone     (404) 577-6000
Facsimile      (404) 221-6501

*Attorneys for Plaintiff Fastcase, Inc*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief has been prepared with Times New Roman 14-point, which is one of the font and point selections approved by the court in LR 5.1B.

*/s/ Robert G. Brazier*
Robert G. Brazier
Georgia Bar No. 078918
rbrazier@bakerdonelson.com

- 25 -

**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| FASTCASE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case 1:16-cv-00327-TCB |
| v. | ) | |
| | ) | **MEMORANDUM OF LAW** |
| LAWRITER LLC, dba CASEMAKER, | ) | **IN SUPPORT OF MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| Defendant. | ) | |
| _____ | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 12, 2016, I electronically filed

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY**

**JUDGMENT** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to the following attorney of

record:

> Kurt M. Rozelsky (Bar No. 617932)
> kurt.rozelsky@smithmoorelaw.com
> Joseph W. Rohe (Bar No. 727154)
> joseph.rohe@smithmoorelaw.com
> 2 West Washington Street, Suite 1100
> P.O. Box 87
> Greenville, SC 29602
> Telephone: (864) 751-7600
> Facsimile: (864) 751-7800

This 12th day of May, 2016.

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*/s/ Robert G. Brazier*
*Robert G. Brazier*
Georgia Bar No. 078918